IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**ASPHALTOS TRADE, S.A.,**

    Plaintiff/Counter-Defendant,

    v.

**BITUVEN PUERTO RICO, LLC,**

    Defendant/Counter-Plaintiff.

**JORGE ARTURO DIAZ MAYORAL,**

    Third-party Plaintiff,

    v.

**BITUVEN PUERTO RICO, LLC,**

    Third-party Defendant.

Civil No. 18-1876 (BJM)

## **OPINION & ORDER**

This matter arises out of a third-party counterclaim by Third-party Plaintiff Jorge Arturo Diaz Mayoral ("Diaz") against Third-party Defendant Bituven Puerto Rico, LLC ("Bituven"). Asphaltos Trade, S.A. ("Asphaltos") filed suit against Bituven, alleging, inter alia, that Bituven breached a contract between Bituven and Asphaltos when it sold liquid asphalt owned by Asphaltos without notifying or paying Asphaltos. Docket No. ("Dkt.") 1. Bituven filed a third-party complaint against Puerto Rico Asphalt, LLC ("PRA") and Jorge Arturo Diaz Mayoral ("Diaz"), alleging that PRA and Diaz had removed said asphalt without Bituven's permission. Dkt. 12. Diaz then filed the third-party counterclaim at issue.

In his third-party counterclaim Diaz alleges, inter alia, that Bituven caused him tortious harm and that Bituven was unjustly enriched under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141, through the act of filing a third-party complaint against PRA and Diaz, the President of PRA. Dkt. 107 (hereinafter "Counterclaim Complaint" or "Countercl. Compl."). Diaz's counterclaim also alleges unclean hands, perjury, bad faith, abuse of legal process, fraud, and defamation on the part of Bituven under both federal and Puerto Rico law. *Id*. at 56-65. Diaz argues that Bituven knowingly filed a third-party complaint containing an inconsistent factual record and frivolous federal claims under 18 USC § 659. *Id*. at 44-67. Bituven moved to dismiss Diaz's counterclaims, Dkt. 156, and Diaz opposed, Dkt. 183. This case is before me by consent of the parties. Dkt. 85-86. For the following reasons, Bituven's motion is **GRANTED IN PART**.

## MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

When faced with a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court "accept[s] as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences therefrom in the pleader's favor" to determine if the complaint states a claim for which relief can be granted. *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011). The court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the countercomplaint, matters of public record, and facts susceptible to judicial notice." *Starr Surplus Lines Ins. Co. v. Mountaire Farms Inc.*, 920 F.3d 111, 114 (1st Cir. 2019) (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)) (internal quotations omitted). In undertaking this review, the court must

> first, "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements[,]" then "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief."

*Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020) (alteration in original) (quoting *Zenón v. Guzmán*, 924 F.3d 611, 615–16 (1st Cir. 2019)). "Plausible … means something more than merely possible," and gauging the plausibility of a claim for relief is "a 'context-specific' job" that requires drawing on "'judicial experience and common sense.'" *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## BACKGROUND[1]

This dispute involves various entities that sell, purchase, or store liquid asphalt. Third-party Plaintiff, Diaz, is a resident of San Juan, Puerto Rico, and the president of PRA, a limited liability company that sells asphalt and is headquartered in Puerto Rico. Countercl. Compl. ¶ 2. Third-party Defendant Bituven is a company headquartered in Puerto Rico that stores liquid asphalt. *Id*. ¶ 3; Dkt. 91 at 1-2. Plaintiff Asphaltos is a corporation with its principal place of business in Panama City, Republic of Panama that trades in asphalt and bitumen-based products. Dkt. 1 at 1-2.

In late 2015, PRA entered into a Product Throughput Agreement with Betteroads Asphalt LLC ("Betteroads") that dictated the terms of PRA's use of certain liquid asphalt storage tanks within a facility in Guayanilla, Puerto Rico owned by Betteroads. Countercl. Compl. ¶¶ 6, 21. Several months later, Bituven agreed to sell liquid asphalt to Betterecycling Corporation ("Betterecycling"), a subsidiary of Betteroads; Bituven and Betterecycling laid out all terms and conditions of the deal in a sales purchase agreement. *Id*. ¶¶ 7-8. The sales purchase agreement dictated price, manner of delivery, cancellation procedure, and the like for all transactions between Bituven and Betterecycling. *Id*.; *see also* Dkt. 34-1. The agreement also included an arbitration

---

[1] The following facts are drawn from Diaz's counterclaim complaint. As with any 12(b)(6) motion, the court assumes that facts from the counterclaim complaint are true and draws all reasonable inferences in Diaz's favor solely for the purpose of ruling on the motion.

clause that would ostensibly govern any contractual disputes between the two parties. *Id*. ¶ 25. As part of the exchange, on January 1, 2016, Betteroads agreed to a Product Throughput Agreement with Bituven, providing Bituven with at least 80,000 barrels worth of liquid asphalt storage in Guayanilla. Countercl. Compl. ¶¶ 7-8; Dkt. 80 at 18-19; *see also* Dkt. 12-2; Dkt. 107 at 3.

PRA and Bituven came into contact in 2016, and in mid-2017 PRA began to purchase asphalt directly from Bituven on a weekly basis. *Id*. ¶ 21. PRA and Bituven orally agreed to use the same terms and prices contained in Bituven's sales purchase agreement with Betterecycling for all of their direct transactions. *Id*. ¶ 55 n.2.[2] Diaz later reaffirmed the agreed-upon price with Bituven representative Julio Iglesias. *Id.*; *see also* Dkt. 34-2. From 2016 until mid-2017, Bituven sold most of the liquid asphalt in their Guayanilla tanks to Betterecycling and only sold smaller amounts directly to PRA. *Id*. ¶ 21. Eventually, however, at the request of Betteroads, Bituven agreed to sell all Bituven's asphalt stored in Betteroads' Guayanilla tanks to PRA instead of to Betterecycling. *Id*.

To purchase liquid asphalt from Bituven, PRA would notify Bituven of the amount that PRA wished to buy. Countercl. Compl. ¶ 21. Bituven would then send PRA a standard invoice with a quote for the amount requested by PRA; in return, PRA would wire Bituven money to prepay for the asphalt. *Id*. Bituven would only permit Betteroads to release asphalt to PRA after they had received PRA's pre-payment. *Id*. Betteroads tracked releases of asphalt to PRA via sales tickets that they would then turn over to Bituven. *Id*. ¶ 31. Each week, Bituven would cross-reference PRA's pre-payment with the sales tickets and look for discrepancies. *Id*. ¶ 43. Bituven

---

[2] The oral agreement between Bituven and PRA does not constitute a legally cognizable contract, as under Puerto Rico law 10 L.P.R.A. § 1302, agreements for an amount greater than three hundred dollars ($300.00) require evidence supporting their existence beyond the testimony of witnesses to the agreement. P.R. Laws Ann. tit. 10, § 1302. The agreement between Bituven and PRA was not physically documented in any form and was for an amount vastly greater than $300.00.

would then ask PRA to satisfy underpayments or would give PRA credit for prepaid asphalt that PRA had not fully withdrawn. *Id*.

After Bituven's agreements with Betteroads, Betterecycling, and PRA were already in place, Asphaltos contracted with Bituven to store asphalt in tanks owned by Bituven within Betteroads' Guayanilla facility. *Id*. ¶ 29. On May 14, 2017, a shipment of liquid asphalt owned by Asphaltos arrived in Guayanilla from Livorno, Italy, on the Da Ming Shan vessel. *Id*.; *see also* Dkt.1-2. The bill of lading for the shipment noted that the Da Ming Shan discharged all 11,606.642 metric tons of asphalt, originally loaded onto the ship in Italy, in Guayanilla on May 14, 2017. *Id*. Months later, Bituven accused PRA and Diaz of making unauthorized removals from the tanks storing this asphalt. *Id*. ¶ 31.

In July 2017, Betteroads allegedly gave Bituven out-of-sequence sales tickets, leading Bituven to believe that Betteroads had breached the product throughput agreement with Bituven. *Id*. ¶ 31. After this incident occurred, Bituven instructed Betteroads and PRA that no entity was permitted to remove any asphalt from the Guayanilla tanks belonging to Bituven without Bituven's express permission. *Id*. Bituven alleges that after giving this instruction, PRA made unauthorized withdrawals from the tanks on three occasions: sometime in July 2017; on May 18, 2018; and on May 25, 2018. *Id.*; *see also* Dkt. 12 ¶ 25. Despite Bituven's allegations, the asphalt that PRA and Diaz had allegedly removed without prior authorization had already been at its final destination in Guayanilla for over two months. Countercl. Compl. ¶¶ 31, 32; *see also* Dkt. 1-2 at 2. Additionally, on April 27, 2018, after the first alleged unauthorized removal of asphalt had supposedly already taken place, Bituven sent PRA an invoice for $1,457,740.90, which PRA paid in July of the same year. Countercl. Compl. ¶ 21. According to Diaz, therefore, PRA has already paid in full for the first supposed illicit removal alleged by Bituven under this invoice. *Id*. ¶ 32. Moreover, Bituven

had established that they would resolve any payment discrepancies through the weekly invoices they sent to PRA as per the agreement between the parties. *Id*. ¶ 45.

In November 2018, Asphaltos filed suit against Bituven, alleging that Bituven had sold Asphaltos's asphalt without notifying or compensating them. Dkt. 1 at 7-12. Bituven then filed three third-party complaints. Countercl. Compl. ¶ 10. Two of the complaints are against Betteroads and PRA and were filed within two separate involuntary bankruptcy cases. *See In re Betteroads Asphalt LLC*, 17-4156(ESL); *In re Betterecycling Corporation*, 17-04157(ESL); Countercl. Compl.  ¶ 11. The third complaint is the present proceeding against PRA and Diaz. Countercl. Compl. ¶ 12. In response, Diaz filed a third-party counterclaim against Bituven. *Id*. ¶ 1.

Bituven's third-party complaint against PRA and Diaz alleges that the parties conspired to remove asphalt belonging to Asphaltos from the tanks in Guayanilla in violation of the Racketeer Influenced Corrupt Organizations ("RICO") Act. 18 U.S.C.A. § 1961; Countercl. Compl. ¶ 33. According to Diaz, Bituven was aware that such removals would have had to take place after the asphalt was already at its final destination in Guayanilla for months, but Bituven still brought felony allegations of embezzlement and theft of interstate or foreign shipments against Diaz under 18 U.S.C. § 659 despite knowing that the allegations were false. *Id*. Furthermore, Diaz avers that Bituven filed the third-party complaint against Diaz in his personal capacity despite knowing that Diaz would have carried out the alleged actions in his professional capacity as the President of PRA. *Id*. ¶ 14.

Diaz also claims that Bituven has unclean hands and has abused judicial process, alleging, among other things, that in Bituven's bankruptcy court proceedings against Betteroads, Bituven denied having any prior relationship with PRA despite a well-documented direct purchasing history between the two entities. Countercl. Compl. ¶ 19; *see also* Dkt. 34-3. In Bituven's

complain in Bankruptcy Court, Bituven's support memo, and other pleadings, Bituven has evidently claimed that PRA is an "unknown entity" to Bituven and that Bituven has never had direct privity with PRA. *Id*. Diaz alleges other similar bad acts and false claims on Bituven's part that shall not be addressed here for reasons elucidated below.

## DISCUSSION

Bituven seeks dismissal of Diaz's claims for general tort and unjust enrichment violations under Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141; unclean hands; perjury; bad faith; abuse of legal process; fraud; and defamation. I will address the first two claims in turn and the remaining claims concurrently.

### (a) General Tort under P.R. Laws Ann. tit. 31, § 5141

"Federal courts sitting in diversity apply the substantive law of the state and, pursuant to statute, Puerto Rico is treated as a state for diversity purposes." *Quality Cleaning Prods. R.C., Inc. v. SCA Tissue N. Am., LLC*, 794 F.3d 200, 204 (1st Cir. 2015). For a general tort claim, the plaintiff must show "(1) a duty requiring the defendant to conform to a certain standard of conduct, (2) a breach of that duty, (3) proof of damage, and (4) a causal connection between the damage and the tortious conduct." *Baum-Holland v. Hilton El Con Mgmt., LLC*, 964 F.3d 77, 87 (1st Cir. 2020). The plaintiff must establish facts that could convince a reasonable person that the plaintiff met each element by a preponderance of the evidence. *Clemente v. United States*, 426 F. Supp. 1, 4 (D.P.R. 1977). Creating a foreseeable undue risk constitutes a breach of a legal duty, but the causal connection to the injury must have been "reasonably foreseeable" in that the defendant could have avoided it had they acted with reasonable care. *Woods-Leber*, 124 F.3d at 51.

To recover on a general tort claim, a plaintiff must prove that the damage caused constituted a material (physical) or moral loss to their rights or property, a loss brought about by the violation

Case 3:18-cv-01876-BJM   Document 226   Filed 08/19/21   Page 8 of 11
Asphaltos Trade, S.A., v. Bituven Puerto Rico, LLC, Civil No. 18-1876 (BJM)
8

of a legal provision chargeable to another party. *Santini Rivera v. Serv. Air, Inc.*, 137 D.P.R. 1 (1994). "[M]oral (emotional) damages could be of such magnitude that their importance exceeds any material damage." *Id*. "[T]he right to claim damages in ex delicto actions, for humiliations and mental sufferings, independent of the existence of physical damages, has been definitely established" under Puerto Rico law. *First Nat. City Bank of New York v. Gonzalez*, 293 F.2d 919, 921 (1st Cir. 1961) (quoting Muriel v. Suazo, 72 P.R.R. 348, 352 (1951)). However, the general tort section of Puerto Rico law does not apply to losses stemming purely from commercial transactions, *Isla Nena Air Servs., Inc. v. Cessna Aircraft Co.*, 449 F.3d 85, 90 (1st Cir. 2006); instead, the plaintiff must show proof of physical or emotional harm. *Vazquez-Filippetti*, 504 F.3d at 49.

Diaz has claimed both "extensive monetary damages and irreparable harm as a direct result of Bituven's tortious actions," Countercl. Compl. ¶ 57. Diaz argues that he has suffered "mental anguish" due to Bituven bringing a third-party complaint that includes federal charges against him. Bituven argues that Diaz's general tort claim failed to note any damages beyond monetary loss for credits owed to PRA, not to Diaz, and therefore the claim must fail. Dkt. 156 at 3. Bituven further claims that Diaz has not alleged any fact which would allow the court to infer emotional damages. *Id*. at 4.

While monetary damages stemming from commercial transactions are not recoverable under general tort theories, see *Vazquez-Filippetti*, 504 F.3d at 49, allegations of emotional damages due to mental anguish and anxiety are cognizable in general tort. *Santini Rivera*, 137 D.P.R. 1. However, under Puerto Rico law, claims for damages from frivolous litigation will only be successful if the plaintiff files them as malicious prosecution or abuse of process cases, not general tort actions. *Bonilla v. Trebol Motors Corp.*, 913 F. Supp. 655, 659 (D.P.R. Dec. 19,

Case 3:18-cv-01876-BJM   Document 226   Filed 08/19/21   Page 9 of 11
Asphaltos Trade, S.A., v. Bituven Puerto Rico, LLC, Civil No. 18-1876 (BJM)
9

1995)). Here, Bituven correctly notes that Diaz has not identified "any negligent or intentional act or omission … other than Bituven's privileged filing of its third-party complaint" for which Bituven could be culpable. Dkt. 4 n.3. Because there is no cause of action under general tort for negligent or malicious filing of frivolous or harassing litigation, *Bonilla*, 913 F. Supp. at 659, Diaz's general tort claim fails.

Accordingly, Diaz's first cause of action is dismissed.

**(b) Unjust Enrichment under P.R. Laws Ann. tit. 31, § 5141**

The five elements of unjust enrichment under 31 L.P.R.A. § 5141 are: "1) [existence] of enrichment; 2) a correlative loss; 3) nexus between loss and enrichment; 4) lack of cause for enrichment; and 5) absence of a legal precept excluding application of enrichment without cause." *Punta Lima, LLC v. Punta Lima Dev. Co., LLC*, 440 F. Supp. 3d 130, 151 (D.P.R. 2020) (quoting *Hatton v. Mun. de Ponce*, 134 D.P.R. 1001 (1994) (officially translated into English without page numbers)). A "correlative loss" occurs when an enriched party received direct social and economic benefit from the actions of the other party and without those actions the enriched party would have sustained an immediate and total loss. *Ortiz Andujar*, 122 D.P.R. 817 (1988).[3]

Diaz claims that Bituven has been unjustly enriched at the expense of both Betterecycling and PRA. Countercl. Compl. ¶¶ 25, 41, 49. However, Bituven correctly argues that Diaz has not sufficiently alleged that he suffered a correlative loss due to Bituven's actions. Dkt. 156 at 4. Diaz contends that he need not have suffered any correlative loss to recover due to unjust enrichment

---

[3] In *Ortiz Andujar*, the court determined that a suspect's destruction of an off-duty officer's personal vehicle, which took place when the officer responded to a call, constituted a correlative loss for which the police precinct was liable. The precinct was liable for the officer's personal financial losses because if the incident had taken place while the officer was on duty, the suspect would have destroyed a police vehicle instead.

because the test for unjust enrichment cited in *Punta Lima* is not relevant to the facts of his case. In *Punta Lima*, the court dismissed the unjust enrichment claim due to the presence of a valid contract between the two parties. Dkt. 183 at 10. If a commercial contract is for a sum greater than three hundred dollars ($300), then under Puerto Rico law it must be written down or recorded in some form. P.R. Laws Ann. tit. 10, § 1302. In the present matter, there is not a valid commercial contract between Bituven and PRA because the parties' purely verbal agreement involved a sum greater than three hundred dollars ($300). Countercl. Compl. ¶ 21, 55 n.2. Nevertheless, the five-step test outlined in *Punta Lima* still holds precedential validity and still requires the plaintiff to have suffered a correlative loss in order to succeed on an unjust enrichment claim. *See, e.g.*, *Ortiz Andujar*, 122 D.P.R. 817; *Hatton*, 134 D.P.R. (1994) (explicitly including correlative loss as one of the five factors underlying a cognizable unjust enrichment claim). Furthermore, Diaz fails to cite a single case in which a commercial agent successfully sued in their personal capacity and received damages due to their company's correlative loss and another party's unjust enrichment. Because Diaz has not sufficiently alleged that he has suffered a direct personal loss resulting from Bituven's actions, his unjust enrichment claim fails.

Accordingly, Diaz's second cause of action is dismissed.

**(c) Unclean Hands, Bad Faith, Abuse of Process, Perjury, Defamation, and Fraud**

In his opposition to Bituven's motion to dismiss, Diaz provisionally conceded his unclean hands, bad faith, abuse of legal process, and perjury claims in the hopes of addressing the claims together with a plea for declaratory judgement in a proposed second amendment to his third-party counterclaim. Dkt. 183 at 11-14. Bituven's motion to dismiss these claims is denied without prejudice pending this second amendment to the third-party counterclaim.

Regarding his defamation and fraud allegations against Bituven, Diaz similarly has stated that he will replead these claims in the proposed second amendment to the third-party counterclaim. Dkt. 183 at 12, 14-15. Bituven's motion to dismiss these claims is denied without prejudice pending Diaz's second amendment to the third-party counterclaim.

## CONCLUSION

For the foregoing reasons, Diaz's general tort and unjust enrichment claims are dismissed with prejudice. However, Diaz's unclean hands, bad faith, abuse of process, perjury, defamation, and fraud claims survive pending Diaz's proposed second amendment to the third-party counterclaim.

Third-party Defendant Bituven's motion to dismiss is **GRANTED IN PART.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 19th day of August 2021.

*s/ Bruce J. McGiverin*
Bruce J. McGiverin
United States Magistrate Judge